FILED
CLERK

8/31/2016 11:25 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ANDREW V. GIUSTO,
individually and on behalf of all other persons
similarly situated,

      Plaintiff,

    -against-

ROSE & WOMBLE REALTY COMPANY,
LLC,

      Defendant.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
15-CV-5249 (ADS)(AYS)

**APPEARANCES:**

**Christopher J. Cassar P.C.**
*Attorney for the Plaintiff*
13 East Carver Street
Huntington, NY 11743

**Kaufman & Canoles, P.C.**
*Attorneys for the Defendant*
150 West Main Street, Suite 2100
Norfolk, VA 23510
  By: Christy L. Murphy, Esq., Of Counsel

**Golenbock Eiseman Assor Bell & Pesoke LLP**
*Attorneys for the Defendant*
437 Madison Avenue
New York, NY 10022
  By: Michael Scott Weinstein, Esq., Of Counsel

**SPATT, District Judge**.

This case arises from allegations that the Defendant Rose & Womble Realty Company,

LLC (the "Defendant") wrongfully withheld a $925 security deposit that the Plaintiff Andrew

Giusto (the "Plaintiff") paid to the Defendant in connection with leasing an apartment from the

Defendant.

Presently before the Court is a motion by the Defendant pursuant to Federal Rule of Civil

Procedure ("Rule") 12(b)(2) and 12(b)(3) to dismiss for lack of personal jurisdiction and

improper venue. Also before the Court is a cross motion by the Plaintiff pursuant to Rule 15(a)(2) for leave to file an amended complaint.

For the reasons set forth below, the Defendant's motion to dismiss for lack of personal jurisdiction is granted, and the Plaintiff's cross-motion to amend is denied.

## I. BACKGROUND

### A. As to the Alleged Facts

The following facts are drawn from the original complaint unless otherwise stated.

According to the complaint, the Plaintiff is a citizen of New York State and currently resides in Suffolk County, New York. (See the Orig. Compl. at ¶¶ 6–7.)

The Defendant is a Virginia corporation that operates a residential and commercial real estate sales, leasing, and brokerage business in various cities in the Hampton Roads area of the Commonwealth of Virginia." (Id. at ¶ 8; see also Zachary's Nov. 5, 2015 Decl., Ex. 11–1, ["Zachary Decl."] at ¶ 5.)

From 2009 to 2015, the Plaintiff was a member of the United States Navy. (See the Pl.'s Jan. 26, 2016 Decl., Dkt. No. 12-2 [the "Pl.'s Decl."] at ¶ 3.) Beginning in 2014, the Plaintiff was stationed in Virginia. (Id.)

On February 14, 2014, the Plaintiff entered into a lease agreement with the Defendant to rent an apartment located in Virginia Beach (the "Lease Agreement"). (See the Lease Agreement, Compl., Ex. A.) The apartment was owned by Cynthia and Ben Rodriguez, who are not parties to this litigation. (See id.) The Defendant acted as the agent and landlord for the apartment. (See id.)

The term of the Lease Agreement was from February 25, 2014 to February 28, 2015. (Id.) The monthly rent was $925. (Id.) In addition, and as relevant here, the Lease Agreement

required the Plaintiff pay the Defendant $925 as a security deposit to "secure [the Plaintiff's] full compliance with the terms of the Lease." (Id. at ¶ 4, p. 2.) The Agreement further provided that "[w]ithin 45 days . . . after the termination of the Lease, [the Defendant] may apply the security deposit . . . to the payment of any damages [the Defendant] has suffered due to [the Plaintiff's] failure to maintain the premises, to surrender the possession of the premises thoroughly cleaned and in good condition (reasonable wear and tear expected), or to fully comply with the terms of the Lease." (Id.)

To that end, the Lease Agreement gave the Defendant the authority to conduct an inspection of the apartment after the termination of the lease to "determine whether [the Plaintiff] has properly maintained the Premises and has left the Premises thoroughly cleaned and in good condition, reasonable wear and tear expected." (Id. at ¶ 17, p. 4.)

In late 2014, the United State Navy advised the Plaintiff that he was going to be honorably discharged on February 12, 2015. (See the Pl.'s Decl. at ¶ 5.) Subsequently, the Plaintiff notified the Defendant that he intended to immediately terminate the Lease Agreement and vacate the premises. (See Compl. at ¶ 18.)

On February 12, 2015, Sonya Lasky ("Lasky"), a representative of the Defendant, conducted a move-out inspection of the apartment. (See Checkout Report, Compl., Ex. B.) In the report of the inspection, Lasky stated that the apartment was clean and that there were no issues with the appliances or the fixtures. (See id.)

On March 4, 2015, Lasky sent the Plaintiff an email in which she asked:

Did you have renters insurance in accordance with your lease agreement? I need to know because when you moved out, you turned off the heat to the unit and 2 pipes burst in the apartment a week after you moved out.

(Cassar's Jan. 26, 2016 Decl., Dkt. No. 12–5 [Cassar's Decl.], Ex. 3.)

On March 9, 2015, the Plaintiff responded:

I don't know if I had renters assurance [sic] but how would that be my responsibility if I had already moved out and done the final walk through? There was no central heating, it was just a small box heater which there was no way I was going to leave running.

(Id.)

On March 10, 2015, Lasky responded:

I understand your point of view. There were 2 sections of the plumbing that burst and [] the condo association went in and saw that the heating unit was off[.] [They] are now holding you liable for the damage. I will keep you informed as to what is happening. Thank you and have a great day.

(Id.)

On March 25, 2015, a representative of the Defendant notified the Plaintiff that it was going to retain his $925 security deposit and that the Plaintiff owed the Defendant an additional $200. (Id. at ¶¶ 22–24; see also Cassar Decl., Ex. 4.) A security deposit form that the Defendant sent to the Plaintiff stated that the $1,025 charged to the Plaintiff was being used to pay the owner's deductible on its insurance to cover the repairs to the apartment. (See Compl., Ex. C.)

On April 15, 2015, the Plaintiff sent an email to Lasky asking for additional documentation of the damage; the insurance claim; and the repairs. (See Cassar's Decl., Ex. 3.) Apparently, Lasky never responded to this request. (See Compl. at ¶ 25.)

The complaint alleges that the Defendant "created a false claim to retain the security deposit of the Plaintiff." (Id. at ¶ 26.)

**B. As to the Procedural History**

On September 10, 2015, the Plaintiff commenced this action, on behalf of himself and all others similarly situated, by filing a complaint against the Defendant. He asserted five causes of

4

action for: (i) the violation of the Virginia Rental Housing Act, Va. Code Ann. § 55-248.2 *et seq.* ("VRHA"); (ii) unjust enrichment; (iii) breach of contract; (iv) the violation of Section 349 of the New York General Business Law ("NYGBL"); and (v) the violation of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.* ("VCPA"). The complaint sought to certify a Rule 23 class action and class-wide monetary damages, as well as declaratory and injunctive relief. (See id. at ¶¶ 35–82.)

On November 5, 2015, the Defendant filed the present motion pursuant to Rules 12(b)(2) and 12(b)(3) to dismiss the complaint for lack of personal jurisdiction and improper venue. (See the Def.'s Mem. of Law, Dkt. No. 11-1 [the "Def.'s Mem. of Law"].)

On January 26, 2016, the Plaintiff filed a cross-motion pursuant to Rule 15(a)(2) for leave to file an amended complaint. (See the Pl.'s Mem. of Law, Dkt. No. 12–10 [the "Pl.'s Mem. of Law"].) The proposed amended complaint ("PAC") added a cause of action for fraud based on allegations that the Defendant's correspondence with the Plaintiff "contained misrepresentations regarding reasons for withholding security deposits[.]" (See PAC, Dkt. No. 12–9 [the "PAC"], at ¶¶ 93–98.)

On January 28, 2016, the Defendant filed a motion pursuant to Fed. R. Civ. P. 12(f) to strike the Plaintiff's opposition memorandum and cross-motion to amend the complaint because the Plaintiff filed the motion more than two months after the original return date for the Defendants' motion to dismiss without obtaining leave from his adversary or the Court. (See the Def.'s Mot. to Strike, Dkt. No. 13.)

On January 29, 2016, Christopher Cassar, Esq., counsel for the Plaintiff, opposed the Defendant's motion to strike, citing law office failure as the reason for his late filing. (See the Pl.'s Opp'n Mem. of Law, Dkt. No. 14.)

On February 10, 2016, the Court issued an order denying the Defendant's motion to strike and setting an amended briefing schedule on the Defendant's motion to dismiss and the Plaintiff's cross motion to amend.

Both motions are now fully briefed.

## II. DISCUSSION

As is made clear below, the Court finds that the Plaintiff has failed to make a *prima facie* showing that personal jurisdiction exists over the Defendant, and therefore, the Court does not reach the issue of venue.

### A. The Legal Standards

#### 1. Rule 12(b)(2)

"'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'" Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citing Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)). "In contrast, when an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." Id. (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 n.3 (2d Cir. 1994)).

Here, the lighter *prima facie* standard applies because there has been no discovery in this case, nor has the Court held an evidentiary hearing on the issue of jurisdiction. See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) ("Where, as here, a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff

need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant.").

In making a determination as to whether a plaintiff has met his or her *prima facie* burden, a court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." <u>Porina v. Marward Shipping Co.</u>, 521 F.3d 122, 126 (2d Cir. 2008) (citation omitted). That is, "'[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.'" <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 714 F.3d 659, 673 (2d Cir. 2013) (quoting parenthetically <u>Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala</u>, 989 F.2d 572, 580 (2d Cir. 1993)). However, a court "will not draw 'argumentative inferences' in the plaintiff's favor," nor is a court "required to accept as true a legal conclusion couched as a factual allegation." <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks and citations omitted).

"'[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits[.]'" <u>Metro. Life Ins. Co.</u>, 84 F.3d at 567 (alteration in original) (quoting <u>Arrowsmith v. United Press Int'l</u>, 320 F.2d 219, 223 (2d Cir. 1963)). Accordingly, here, the issue of personal jurisdiction is governed by New York's Civil Practice Law and Rules Section 302, New York's long-arm statute ("Section 302"). <u>See</u> <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 104 (2d Cir. 2006). That statutes provides that a court may exercise jurisdiction over any non-domicilliary who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a).

In the present case, the Plaintiff asserts that personal jurisdiction is proper solely under the first prong and the second prong.  (See the Pl.'s Mem. of Law at 10.)  Thus, the Court will focus its analysis below exclusively on those two prongs.

In addition to satisfying the relevant statutory requirements for long-arm jurisdiction, a court's exercise of jurisdiction over a domiciliary must also comport with the Due Process Clause of the Fourteenth Amendment.  MacDermid, Inc. v. Deiter, 702 F.3d 725, 728 (2d Cir. 2012).

**2. Rule 15**

Rule 15(a)(1) states that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Here, it is undisputed that the Plaintiff did not file an amended complaint within 21 days after serving it on the Defendant, or within 21 days after the service of the Defendant's motion to dismiss. Thus, Rule 15(a)(2) governs his proposed amendments.

That provision states, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (alteration added). The Rule further states that "[t]he court should freely give leave when justice so requires." See Fed. R. Civ. P. 15(a)(2).

Interpreting this latter provision, the Second Circuit has stated that only "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment' will serve to prevent an amendment prior to trial.'" Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962)).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss[.]" Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). Thus, if the PAC or other evidence provided by the Plaintiff in support of his cross-motion fails to provide a *prima facie* basis for exercising personal jurisdiction over the Defendant, then the Plaintiff's cross-motion to amend will be denied as futile. See Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010) ("Neither the [p]laintiffs' third amended complaint nor the evidence adduced during discovery provided any basis to demonstrate that the district court would have had personal jurisdiction over [the defendant]. Accordingly, we affirm the district court's order denying the [p]laintiffs' motion for leave to amend their complaint.").

**B. As to the New York Long-Arm Statute**

### 1. Transacting Business

In its motion to dismiss, the Defendant contends that the original complaint failed to allege that the Defendant "transacted business" in New York within the meaning of Section 302(a)(1).  (<u>See</u> the Defs.' Mem. of Law at 7.)  In support, it offered a declaration by Arthur J. Zachary ("Zachary"), the President; Chief Executive Officer; and Chief Operating Officer of the Defendant, in which Zachary states that:

> [The Defendant] does not have any bank accounts or other property in the State of New York, it does not have a telephone listing in the State of New York, it does not do public relations work in the State of New York, it does not employ any individuals permanently located in New York to promote its interests, it does not solicit business in New York, and its business operations do not have local character in the State of New York[.]

(<u>Id.</u> at ¶ 6.)

In its cross-motion to amend, the Plaintiff does not dispute the statements made by Zachary with regard to the Defendant's lack of business ties to the New York area.  (<u>See</u> the Pl.'s Mem. of Law at 11.)  However, he offers a copy of a March 25, 2015 letter that the Defendant sent to the Plaintiff, which states:

> Enclosed please find an itemized list of charges.  Based on these charges you have a balance due of $200.00.
> **Credits**
> Security Deposit $925
> Total Credits $925
>
> **Charges**
> Insurance Deductible for Repairs $1,000
> Future Court Costs $125
> Amount Due $200

> Please remit the balance due immediately. If you have any questions or concerns regarding the charges or balance due, please contact us[.]

(<u>See</u> Cassar Decl., Ex. 4.)

The Plaintiff asserts that this letter contains fraudulent misrepresentations and because the Defendant sent it to the Plaintiff's address in New York, the Plaintiff argues that it has made a *prima facie* case that the Defendant transacted business in New York within the meaning of Section 302(a)(1). (See the Pl.'s Mem. of Law at 11.) The Court disagrees.

As noted earlier, Section 302(a)(1) provides that a court may exercise jurisdiction over a foreign defendant that "transacts any business within the state or contracts anywhere to supply goods or services in the state." New York courts have recognized that "'[t]he overriding criterion' necessary to establish a transaction of business is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York]." Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508, 881 N.E.2d 830, 834 (N.Y. 2007) (quoting McKee Elec. Co. v. Rauland–Borg Corp., 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (N.Y. 1967)). In making that determination, relevant factors include:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004) (quoting Agency Rent A Car Sys., Inc. v. Grand Rent Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)). However, no one factor is dispositive, and "the ultimate determination is based on the totality of the circumstances." Id. (internal quotation marks, alteration, and citation omitted).

For example, the Defendant relies on Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757 (2d Cir. 1983). There, the defendant, a California corporation, sent a cease and desist letter to the plaintiff at its New York headquarters alleging that the plaintiff was infringing upon its

copyright and trademarks for a line of weight-loss garments.  Id. at 760.  After receiving the

letter, the plaintiff filed suit in the Southern District of New York seeking a declaratory judgment

that its products did not infringe upon the defendant's intellectual property rights.  See id.

On appeal, the Second Circuit rejected the plaintiff's argument that the cease and desist

letter constituted a "transaction of business" within the meaning of Section 302(a)(1).  Id. at 766.

It reasoned that "New York courts have consistently refused to sustain section 302(a)(1)

jurisdiction solely on the basis of defendant's communication from another locale with a party in

New York."  Id. at 766.  The circuit court also found it "difficult to characterize [the] letter

alleging infringement in an unspecified locale and threatening litigation in an unspecified forum

as an activity invoking the 'benefits and protections' of New York law."  Id.

Similarly, in Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 124 (2d Cir. 2013), the

defendants sent notices to the plaintiff, a comic book company, seeking to exercise their

purported rights under the Copyright Act to the drawings of their later father, a comic book

illustrator.  See id. at 125–27.  The plaintiff then brought suit in the Southern District of New

York seeking a declaratory judgment that the notices were invalid.  See id. at 127.

On appeal, the Second Circuit found that the notices were not sufficient to render two of

the defendants, who were California residents, subject to jurisdiction in New York courts

pursuant to Section 302(a)(1).  See id. at 128–32.  The circuit court found that several factors

weighed against a finding that by sending the notices, the defendants had "transacted business"

in New York, including that the defendants "were not physically present in New York—whether

physically or through some other continuous contact—in connection with the underlying dispute

in this case."  Id. at 129–130.  It also found significant the fact that the communications at issue

were not "part, or in contemplation, of a course of business dealings with [the plaintiff]."  Id. at

130.  Finally, the court found important the fact that the notices "asserted legal rights under a body of law other than New York"—namely, federal copyright law.  Id.  The court found that these factors "foreclose[d] the exercise of section 302(a)(1) jurisdiction in the circumstances of this case."  Id.; see also Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 509, 881 N.E.2d 830, 835 (N.Y. 2007) (finding that a demand letter sent by English solicitors to the plaintiff in New York to enforce an English judgment was not sufficient to "invoke the privileges and protections of our State's laws").

In the present case, it is undisputed that the Defendant is a Virginia corporation with no commercial or other ties to the New York area.  Nor does the Plaintiff dispute that he entered into the Lease Agreement for an apartment in Virginia while he was stationed in Virginia.  Finally, it is undisputed that the events that the precipitated the dispute over the Plaintiff's security deposit — namely, a pipe burst — also occurred in the Virginia apartment.  (See Zachary Decl. at ¶ 6; the Pl.'s Mem. of Law at 10.)

Thus, the only evidence offered by the Plaintiff tying the Defendant to New York is the Defendant's March 25, 2015 letter to the Plaintiff's address in New York outlining the charges resulting from the pipe incident, and the Defendant's decision to apply the security deposit to cover those charges.  (See Cassar Decl., Ex. 6.)

 However, as the cases above establish, "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."  Beacon Enterprises, Inc., 715 F.2d at 766.  Moreover, similar to the letters in Bacon and Marvel, the Defendant's March 25, 2015 letter does not assert any legal rights under New York law, or threaten to sue the Plaintiff at all, let alone do so in New York.  Under these circumstances, the Court is hard-pressed to find that the March 25, 2015

letter is an activity that invoked the "benefits and protections" of New York law. See Beacon, 715 F.2d at 766 ("It is difficult to characterize Menzies' letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the 'benefits and protections' of New York law.").

The PAC adds little in the way of jurisdictional allegations. In it, the Plaintiff alleges that after the Plaintiff left the apartment on February 12, 2015, the Defendant was "fully aware" that the Plaintiff was returning to his home in New York. (See Am. Compl. at ¶ 25.) However, even construed as true, the mere fact that the Plaintiff felt the consequences of the Defendant's decision to withhold his security deposit in New York is not a sufficient ground for the exercise of personal jurisdiction under Section 302(a)(1). That is because those consequences do not arise from the transaction of business in New York. Rather, they arise from a Lease Agreement entered into in Virginia and alleged damages to the Plaintiff's apartment in Virginia. See Ehrenfeld, 9 N.Y.3d at 511, 881 N.E.2d 830 ("[T]he alleged effects of threatened enforcement of the English judgment may benefit defendant by chilling plaintiff's speech, but those effects do not arise from his invocation of the privileges and benefits of our State's laws. Rather, they arise from an English remedy and plaintiff's unilateral activities in New York . . . . As such, those effects do not form a proper basis for CPLR 302 (a) (1) jurisdiction."); cf. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001) ("'The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.'") (quoting United Bank of Kuwait v. James M. Bridges, Ltd., 766 F. Supp. 113, 116 (S.D.N.Y.1991)).

In addition, the PAC adds a fraud claim based on the alleged misrepresentations made by the Defendant in the March 25, 2015 letter regarding the reason for withholding the Plaintiff's security deposit — namely, to cover the insurance costs incurred by the Defendant in repairing the pipe damage to the Plaintiff's apartment. (See PAC at ¶¶ 93–98.) The Plaintiff appears to argue that because his fraud claim is predicated on the March 25, 2015 letter, the fact that it was addressed to the Plaintiff in New York is sufficient to confer jurisdiction under Section 302(a)(1). (See the Pl.'s Mem. of Law at 11.) Again, the Court disagrees.

As noted above, the March 25, 2015 letter does not refer to New York law or threaten litigation in New York. Rather, the letter provides the Plaintiff with an itemized list of the security deposit and other charges to the Plaintiff's account arising from the alleged damages to the Virginia apartment. Indeed, the Defendant appears to have sent the notice to the Plaintiff as a means of complying with its obligations under Virginia law to provide tenants with a "written notice" that "itemize[s]" "[t]he security deposit and any deductions, damages and charges . . . within 45 days after termination of the tenancy and delivery of possession." Va. Code Ann. § 55-248.15:1. Thus, even assuming *arguendo* that the letter could form the basis of a plausible fraud claim, the Court finds that it is not plausible to infer that the Defendant was seeking to invoke the benefits and protections of New York law by sending the letter to the Plaintiff in New York.

Finally, the Plaintiff relies on two district court cases. In McQueen v. Huddleston, 17 F. Supp. 3d 248, 252 (W.D.N.Y. 2014), the district court found the plaintiff made a *prima facie* showing that the court had personal jurisdiction over a Kentucky lawyer under Section 302(a)(1) based on allegations that the lawyer sent a collection letter to the plaintiff's address in New York; left two voicemails on the plaintiff's New York phone number regarding the debt, which

prompted the plaintiff to file a complaint with the New York State Attorney General about the lawyer's collection efforts; and subsequently, left additional voicemails on the plaintiff's New York phone number despite being notified of the plaintiff's consumer complaint. Id. at 251–252. Similarly, in Sisler v. Wal-Mart Stores, Inc., No. 02-CV-602A, 2003 WL 23508105, at *1 (W.D.N.Y. Dec. 24, 2003), a district court found that a plaintiff, a New York resident, made a *prima facie* showing that a foreign defendant's actions constituted the "transaction of business" under Section 302(a)(1) based on allegations that the defendant terminated the plaintiff's employment, forced her to sign a restitution agreement, and then made improper attempts to collect a debt at her address in New York. Id.

By contrast, here the Plaintiff's theory of jurisdiction rests solely on the mailing of the March 25, 2015 letter to the Plaintiff's New York address. He does not allege that the Defendant engaged in the type of extensive collection efforts described in Sisler or McQueen. Furthermore, those cases involved claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq, and thus, the defendants' liability was predicated on the letters themselves. Here, by contrast, the Plaintiff's claims are based on the actions taken by the Defendant and the alleged misrepresentations made by the Defendant regarding the Plaintiff's obligations under a Lease Agreement entered into in Virginia for a Virginia apartment. Thus, unlike the plaintiffs' FDCPA claims in Sisler and McQueen, the Plaintiff's claims are much more closely tied to the actions of the Defendant in Virginia rather than the letter sent to Plaintiff in New York. Therefore, the Court finds Sisler and McQueen to be distinguishable.

In sum, the Court finds that the Plaintiff has failed to make a *prima facie* showing — either in the original complaint, the PAC, or through any other documents submitted in support of his cross-motion — that the Defendant invoked the benefits and privileges of New York law.

Therefore, the Court finds that it cannot exercise jurisdiction over the Defendant under Section 302(a)(1).

### 2. Tortious Act Within the State

The Plaintiff also asserts that the Court may exercise personal jurisdiction over the Defendant under Section 302(a)(2), which authorizes a New York court to exercise personal jurisdiction over any non-domicilliary who "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." (See the Pl.'s Mem. of Law at 10.) As in Section 302(a)(1), the Plaintiff contends that the Defendant's act of sending the March 25, 2015 letter to the Plaintiff's New York address constitutes a "tortious act" committed within New York state because according to the Plaintiff, the letter contains fraudulent misrepresentations regarding the reason the Defendant was withholding the Plaintiff's $925 security deposit. (See the Pl.'s Mem. of Law at 10.)

In opposition, the Defendant contends that the "[c]ourts have consistently held that merely mailing a letter to New York is not [an tortious] act committed within New York" for purposes of Section 302(a)(2). (See the Def.'s Reply Mem. of Law, Dkt. No. 16, at 9.) The Court agrees.

It is well-established that to qualify for jurisdiction under Section 302(a)(2) "a defendant's act or omission [must have] occur[red] within the State." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 790 (2d Cir. 1999) (alterations in original) (quoting Kramer v. Vogl, 17 N.Y.2d 27, 31, 267 N.Y.S.2d 900, 215 N.E.2d 159 (N.Y. 1966)); see also Madison Capital Markets, LLC v. Starneth Europe B.V., No. 15 CIV. 7213, 2016 WL 4484251, at *8 (S.D.N.Y. Aug. 23, 2016) ("The New York Court of Appeals has construed this provision [Section 302(a)(2)] to require that the defendant was physically present in New York

when he committed the tort.") (citing <u>AVRA Surgical Robotics, Inc. v. Gombert</u>, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014)).

Adhering to this principle, the majority of lower courts have held that jurisdiction under Section 302(a)(2) cannot be predicated on letters mailed into New York, even if plaintiffs assert fraud claims arising from representations made in the letters.  See <u>Thackurdeen v. Duke Univ.</u>, 130 F. Supp. 3d 792, 804 (S.D.N.Y. 2015) ("'In contrast to the conflicting authority in the state courts, the federal cases construing § 302(a)(2) . . . have uniformly held that jurisdiction under the section cannot be predicated on telephone calls made or letters mailed into this State.") (quoting parenthetically <u>Stein v. Annenberg Research Inst.</u>, 90–cv5224 (LLS), 1991 WL 143400, at *3 (S.D.N.Y. July 19, 1991)); <u>777388 Ontario Ltd. v. Lencore Acoustics Corp.</u>, 142 F. Supp. 2d 309, 322 (E.D.N.Y. 2001) (noting the "well-settled principle that misrepresentations that are made by a non-domiciliary to a party in New York do not constitute torts committed within New York") (collecting cases); <u>cf.</u> <u>Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 29 (2d Cir. 1997) ("The acts giving rise to Bensusan's lawsuit—including the authorization and creation of King's web site, the use of the words "Blue Note" and the Blue Note logo on the site, and the creation of a hyperlink to Bensusan's web site—were performed by persons physically present in Missouri and not in New York. Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2).").

The only case cited by the Plaintiff in support of his position is <u>Polish v. Threshold Tech. Inc.</u>, 72 Misc.2d 610, 340 N.Y.S.2d 354 (N.Y. Sup. Ct. 1972).  There, the New York Supreme Court held that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state."  <u>Id.</u> at 612.

However, <u>Polish</u> is not binding on this Court and appears inconsistent with the majority of cases discussed above.  Accordingly, the Court declines to follow it.  <u>See</u> <u>Mirman v. Feiner</u>, 900 F. Supp. 2d 305, 319 n.15 (E.D.N.Y. 2012) (noting that "the § 302(a)(2)-based conclusion in <u>Polish</u> is itself problematic" and inconsistent with binding Second Circuit and New York Court of Appeals precedent); <u>United Res. 1988-I Drilling & Completion Program, L.P. v. Avalon Expl., Inc.</u>, No. 91 CIV. 8703 (RPP), 1994 WL 9676, at *2 (S.D.N.Y. Jan. 10, 1994) ("However, as Defendants have pointed out, <u>Polish</u> is a minority rule, most courts require physical presence in New York for a tortious act to be the basis of jurisdiction under Section 302(a)(2)."); <u>Van Essche v. Leroy</u>, 692 F. Supp. 320, 324 (S.D.N.Y. 1988) ("[T]he <u>Polish</u> court's view of § 302(a)(2) has been rejected by other New York courts.").

For these reasons, the Court finds that the Plaintiff has also failed to establish personal jurisdiction under Section 302(a)(2).

## C. As to Due Process

Even if the Court concluded that exercising personal jurisdiction was proper under Section 302(a)(1) or Section 302(a)(2), the Court would still find that doing so would violate the Due Process Clause of the Fourteenth Amendment.

"'To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances.'"  <u>Eades v. Kennedy, PC Law Offices</u>, 799 F.3d 161, 168–69 (2d Cir. 2015) (quoting <u>Terrorist Attacks on Sept. 11, 2001</u>, 714 F.3d at 673).

As the Court finds that the Plaintiff has failed to allege the requisite minimum contacts, it need not reach the reasonableness prong.  "Where, as here, specific jurisdiction is asserted,

'minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" Id. (quoting Licci, 732 F.3d at 170). Although the standard for satisfying the minimum contacts requirement for specific jurisdiction under the Due Process clause is not completely co-extensive with the standard for satisfying the standard for transacting business under Section 302(a)(1) discussed above, see Licci, 732 F.3d at 170, there is significant overlap between the two standards. See Sherwin-Williams Co. v. C.V., No. 14-CV-6227(RA), 2016 WL 354898, at *4 (S.D.N.Y. Jan. 28, 2016) ("The Court's assertion of personal jurisdiction over Defendants would comport with the minimum contacts requirement 'for the same reasons that it satisfies New York's long-arm statute.'") (quoting Chloe, 616 F.3d at 171); Minnie Rose LLC v. Yu, No. 15 CIV. 1923 (ER), 2016 WL 1049020, at *7 (S.D.N.Y. Mar. 11, 2016) ("The requisite 'minimum contacts' analysis 'overlaps significantly' with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State.") (quoting Brown v. Web.com Group, Inc., 57 F.Supp.3d 345, 358 (S.D.N.Y. 2014));

Applying these standards here, the Court finds that the Plaintiff has failed to show the requisite minimum contacts for many of the same reasons already discussed in the context of Section 302(a)(1). Namely, the Plaintiff has pointed to no evidence or allegations suggesting that the Defendant ever attempted to purposefully avail itself of the privilege of doing business in New York **so** that it could foresee being hailed into court here. It has no ties to New York; the Lease Agreement at issue concerned a Virginia apartment and was negotiated and entered into in Virginia; the damages precipitating the dispute over the security deposit occurred in Virginia; and the March 25, 2015 letter sent by the Defendant to the Plaintiff's New York address makes no mention of New York law, nor does it threaten to sue the Plaintiff in a New York court.

Rather, it merely itemizes the charges resulting from the damages the Plaintiff allegedly caused while a tenant in the Virginia apartment. These allegations are simply not sufficient to supply the type of minimum contacts required for this Court to assert specific jurisdiction over the Defendant under the Due Process Clause. See Int'l All. of First Night Celebrations, Inc. v. First Night, Inc., No. 3:08-CV-1359, 2009 WL 1457695, at *5 (N.D.N.Y. May 22, 2009) ("The facts that Defendant sent the August 2008 letter or sent Plaintiff a cease and desist letter or that it has contracted with New York artists to perform in Massachusetts are insufficient to establish minimum contacts. These latter facts are too attenuated to satisfy due process."); Hearst Corp. v. Goldberger, No. 96 CIV. 3620 (PKL) (AJP), 1997 WL 97097, at *12 (S.D.N.Y. Feb. 26, 1997) ("Letters and telephone calls from outside New York to people in New York are not sufficient to establish personal jurisdiction under CPLR § 302(a)(1) or the due process clause.") (emphasis added) (collecting cases).

In sum, the Court finds that the even construed as true, the allegations in the complaint, the PAC, as well as the evidence offered by the Plaintiff, are insufficient to satisfy the Plaintiff's *prima facie* burden to show that this Court may exercise personal jurisdiction over the Defendant under the New York long-arm statute or under the Due Process clause.

### III. CONCLUSION

For the foregoing reasons, the Defendant's Rule 12(b)(2) motion is granted, and the Plaintiff's cross-motion to amend is denied as futile. The Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
August 31, 2016

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge